# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **JOSEPH W FONTENOT** | **CASE NO. 6:20-CV-00115** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **UNION TANK CAR CO** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM RULING

Presently before the Court is the Motion for Summary Judgment [ECF No. 23] filed by defendant, Union Tank Car Co. ("Union"). Plaintiff opposes the motion. For the reasons set forth below, the Court DENIES the motion.

## I.
### BACKGROUND

Plaintiff Joseph W. Fontenot was employed by Union from 1967 until 2006.[1] Fontenot initially worked in Union's blasting/coatings department.[2] He eventually moved into management positions at Union but continued to work in coatings until 1999, when he moved into sales. Fontenot retired from Union in 2006.[3] In February 2019, Fontenot was diagnosed with Myelodysplastic syndrome ("MDS").[4] Fontenot alleges that he contracted MDS from his exposure to benzene and benzene-containing products while he was employed by Union.[5] Specifically, he

---

[1] Trial Deposition of Joseph Fontenot, Exhibit A to Document 23.
[2] *Id.*
[3] *Id.*
[4] Document 1.
[5] *Id.*

1

alleges that he was in daily or regular contact with chemicals containing benzene for thirty-two (32) years, from 1967 to 1999.[6]

On October 17, 2019, Fontenot filed his Petition for Damages in the 13th Judicial District Court in Evangeline Parish, Louisiana. On January 24, 2020, Union removed the case to this Court. The case is currently set for a bench trial in September 2022.

## II.
### LAW AND ANALYSIS

### A. Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[7] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[9] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[10]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and

---

[6] *Id.*
[7] Fed. R. Civ. P. 56(a).
[8] *Id.*
[9] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[10] *Lindsey v. Sears Roebuck and Co.,* 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[11] "Credibility determinations are not part of the summary judgment analysis."[12] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[13]

### B. Workers' Compensation as an Exclusive Remedy

Union contends that summary judgment is appropriate because the Louisiana Workers' Compensation Act ("LWCA") provides the exclusive remedy for Fontenot's claim.[14] Section 1032(A) of the LWCA provides in pertinent part:

> A(1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to the Employee or his dependent on an account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal or business, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
>
> (b) This exclusive remedy is *exclusive* of all claims, including any claims that might arise against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine.[15]

---

[11] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[12] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).
[13] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catlett*, 477 U.S. 317, 322 (1986)).
[14] La. R.S. 23:1032.
[15] *Id.*

Under these provisions, an employee's remedies against his or her employer for negligence that results in a workplace injury are displaced by the exclusive remedies of the LWCA.[16] In other words, an employee cannot assert an independent negligence claim for a workplace injury covered under the LWCA. An employee may, however, assert an independent claim for an intentional act.

Here, Fontenot alleges an "occupational disease"—that his exposure to benzene while working for Union caused his MDS. In 1952, the Louisiana legislature provided for the coverage of occupational diseases under Louisiana's workers' compensation law. The statute originally defined "occupational disease" by specifically listing covered diseases, stating in part that "[a]n occupational disease shall include only those diseases hereinafter listed when contracted by an employee in the course of his employment as a result of the nature of the work performed."[17] This "exclusive list," included diseases caused by contact with specific substances, namely asbestosis, silicosis, dermatosis, and pneumoconiosis.[18] In 1958, the Louisiana legislature added tuberculosis as one of the specified occupational diseases for certain hospital workers. Finally, in 1975 the legislature revised La. Rev. Stat. 23:1031.1(A) by removing the list of specific diseases covered under the LWCA and, in its place, adopted a broad definition of an occupational disease: "[a]n occupational disease shall mean only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease." Therefore, MDS caused by benzene exposure at work was not a covered occupational disease until this revision in 1975.

Fontenot alleges daily workplace exposure to benzene from 1967 to 1984, and "regular" exposure to benzene from 1984 to 1999. Fontenot's benzene exposure thus straddles the 1975

---

[16] *Smith v. 3M Corp. Co.*, No. CV 20-837, 2021 WL 4037494, at *3-5 (W.D. La. Sept. 2, 2021).
[17] La. R.S. 23:1031.1
[18] *Id.*

amendment to the LCWA. Union contends that Fontenot's claim is barred as an independent negligence claim because his occupational disease accrued after 1975. Accordingly, the viability of Fontenot's claim turns on the standard for determining when Fontenot's claim accrued. The Louisiana Supreme Court addressed this precise issue in the case of *Austin v. Abney Mills, Inc.*[19] and adopted what has become known as the "significant tortious exposure" standard. Under this standard, a claim involving a long-latency occupational disease occurs when the plaintiff has exposure to disease-causing agents that is "significant" and sufficient to "later result in the manifestation of damages."[20] The *Austin* case involved exposure to asbestos, and the court ruled that exposure to asbestos is "significant" when "asbestos dust has so damaged the body that the fibro-genic effects of its inhalation will progress ***independently of further exposure***."[21] Applying this standard to a case of alleged benzene exposure, the inquiry should be framed in terms of the point when the effect of Fontenot's exposure to benzene—in terms of causing his disease—progressed "independently of further exposure."

     Union offers three arguments supporting summary judgement. First, Union argues that a simple math calculation resolves this issue: of the thirty-two (32) years during which Fontenot claims he was exposed to benzene, eight (8) of those years would have been pre-1975, while twenty-four (24) of those years were post-1975; further, of the seventeen (17) years Fontenot was allegedly exposed to benzene on a "daily" basis, eight (8) of those years were pre-1975 while nine (9) of the years were post-1975. Union thus equates "significant tortious exposure" solely to the number of years of exposure, and if the number of years of exposure after 1975 are greater than the number of years of exposure before 1975, the claim accrued post-1975 and is barred. The Court

---

[19] 824 So.2d 1137 (La. 9/4/52).
[20] *Id*. at 1154
[21] *Id*. (emphasis added)

disagrees. *Austin's* standard is not based on a simple mathematical comparison of exposure years, but on the impact of exposure on the plaintiff and the point when that exposure is sufficient to cause disease progression independent of future exposure. Nothing in the summary judgment record suggests that the simple linear elapse of time is the determining factor in whether Fontenot experienced "significant exposure" before or after 1975. Moreover, Fontenot's expert, Dr. Enrique Medina, opined that Fontenot's exposure was more regular before 1984.[22] Fontenot also testified as to some initial symptoms of MDS prior to 1975.[23]

Second, Union argues that the latency period for MDS averages 10 years from point of significant exposure.[24] In other words, on average, an individual develops the onset of MDS symptoms within 10 years of significant exposure. Union extrapolates from this opinion and argues that Fontenot could not have received significant exposure prior to 1975. A review of Dr. Dydek's report reflects that the latency period for MDS is variable but that most studies have shown that the onset of the disease occurs on average about 10 years from the time that a significant exposure to benzene occurs.[25] This argument presents a much closer call given the length of time between Fontenot's alleged "significant exposure" and his diagnosis in 2019. However, while this evidence may be indicative of when exposure may have occurred, it does not preclude, as a matter of law, significant exposure prior to 1975. Union's arguments go to the weight of the evidence and the credibility of Plaintiffs' experts in opining on pre-1975 exposure, all of which are matters for the trier-of-fact. [26] In sum, the evidence in the summary judgment record is sufficient to create a triable

---

[22] ECF No. 23-5.
[23] ECF No. 23-4. This testimony may be subject to a credibility challenge on the basis of expert medical testimony regarding the latency and progression of MDS; but credibility and the weight of evidence are matters for the trier-of-fact.
[24] *See* Expert Toxicology Report of Dr. Thomas Dydek, Exhibit C to Document 23.
[25] Expert Report of Dr. Thomas Dydek, Exhibit C to Document 23.
[26] Here, the trier-of-fact will be the Court.

issue as to whether Fontenot had significant exposure prior to the 1975 amendments to the LWCA. Accordingly, the Court need not address whether Fontenot's injuries resulted from intentional acts.

Accordingly, Union's Motion for Summary Judgment will be denied.

THUS DONE in Chambers on this 24th day of February, 2022.

 

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE